UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGELO GUTIERREZ, | Case No. C08-1556-JCC-JPD |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| DEPUTY BRIAN SCHRADER, *et al.*, | |
| Defendants. | |

Plaintiff Angelo Gutierrez, proceeding *pro se* and *in forma pauperis*, brings a civil-rights complaint in which he alleges that his constitutional rights were violated while he was a pretrial detainee in Skagit County Jail. (Dkt. 12.) Defendants move for summary judgment. (Dkts. 32, 39.) In December 2009, the Court granted Mr. Gutierrez's motion for an extension of time to respond to the summary judgment motions and set a deadline of January 8, 2010, for his response. To this date, Mr. Gutierrez has neither filed a response nor sought another extension of time. Having reviewed the papers and the entire record, the Court recommends GRANTING defendants' motions for summary judgment (Dkts. 32, 39)—construed, in relevant part, as motions to dismiss—and DISMISSING the complaint without prejudice based on plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

REPORT AND RECOMMENDATION
PAGE - 1

**BACKGROUND**

Although plaintiff Mr. Gutierrez is presently an inmate in the Washington State Penitentiary, at the time of the incident in question he was a pretrial detainee in Skagit County Jail. Defendants are Skagit County and individuals who were Skagit County Jail officers on that day—Sergeant Brian Schrader, Deputy Anthony Smith, Deputy Izabela Kammerer, and Deputy James Shuler. (Dkt. 12, at 4.) The following is undisputed. On February 24, 2006, while Mr. Gutierrez was being led back to his cell from a scheduled hearing, Sergeant Schrader ordered Mr. Gutierrez to remove unauthorized clothing—apparently thermal garments—from beneath his prison uniform. (Dkt. 39-3, at 4 (hereinafter "Gutierrez Dep. Tr.," at 12–14).)[1] Mr. Gutierrez got "hot" and refused to do remove the garments for about ten minutes.[2] (Gutierrez Dep. Tr., at 13–14.) After he finally surrendered the unauthorized clothing, Mr. Gutierrez was once again being led to his cell when a contraband cigarette lighter dropped out of his waistband and fell to the ground. (Gutierrez Dep. Tr., at 16.) Mr. Gutierrez picked the lighter up and threw it against a wall, where it audibly exploded. (Gutierrez Dep. Tr., at 16–17; Dkt. 39-4 (hereinafter "Schrader Decl."), at 2–3; Dkt. 39-5 (hereinafter "Shuler Decl.), at 2). Sergeant Schrader and Deputy Shuler immediately wrestled Mr. Gutierrez to the floor, called for backup officers, and sought to search Mr. Gutierrez's body for other contraband. (Gutierrez Dep. Tr., at 18–30; Schrader Decl., at 3; Shuler Decl., at 2). While Deputies Shuler, Smith, Kammerer, and Leer[3] helped to subdue Mr. Gutierrez, Sergeant Schrader pulled Mr.

---

[1] At his deposition, Mr. Gutierrez first stated that Sergeant Schrader ordered him to remove the unauthorized clothing (Gutierrez Dep. Tr., at 13–14) and later stated that it was Deputy Shuler who gave the order (*id.* at 72.). Sergeant Schrader and Deputy Schuler state that Sergeant Schrader gave the order. (Dkt. 39-4, at 2 (Schrader Decl., at 2); Dkt. 39-5, at 2 (Shuler Decl., at 2).)

[2] Mr. Gutierrez stated, "So I just ran my mouth to run my mouth, just to be – just to resist. What I was doing was just to let them know I'm giving these because I want to give them to you. I already knew I had to give [the clothes] up. It's just a macho thing." (Gutierrez Dep. Tr., at 74.)

[3] Deputy Leer is not named as a defendant.

REPORT AND RECOMMENDATION
PAGE - 2

1    Gutierrez's pants down, discovered toilet paper between his butt cheeks, and spread his butt
2    cheeks to examine his anus.  (Gutierrez Dep. Tr., at 28; Schrader Decl., at 3; Shuler Decl., at
3    2–3.)  Mr. Gutierrez's anus was wet with some kind of liquid, but nothing was protruding from
4    it.  (Gutierrez Tr., at 28; Schrader Decl., at 3.)

5        Mr. Gutierrez's and defendants' accounts part ways about how roughly Mr. Gutierrez
6    was handled and whether Deputy Schrader used his fingertip to penetrate Mr. Gutierrez's anus
7    in search of contraband.  Defendants vehemently deny that Deputy Schrader digitally
8    penetrated Mr. Gutierrez's anus.  (Schrader Decl., at 4; Shuler Decl., at 3; Dkt. 39-7
9    (hereinafter "Smith Decl."), at 3.)  It is undisputed that Mr. Gutierrez was later taken to the
10   hospital, where a search warrant was obtained so that he could be x-rayed and have his feces
11   examined for additional contraband that was never discovered.  (Dkt. 39-2, at 8–16; Gutierrez
12   Tr., at 34–35.)  Mr. Gutierrez suffered from minor cuts on his wrist related to being
13   handcuffed.  (Gutierrez Tr., at 36–37.)

14       Mr. Gutierrez and defendants also differ as to whether Mr. Gutierrez ever filed a
15   grievance regarding what happened.  In his complaint, Mr. Gutierrez states, "I filed a
16   Grievance but the Jail did not respond to the Grievance C[o]mplaint and did not return it
17   either."  (Dkt. 12, at 2.)  In his deposition, Mr. Gutierrez explained that two days after the
18   incident, he had his cellmate Joey Lisano fill out a grievance form about what had transpired.
19   (Gutierrez Dep. Tr., at 43.)  In contrast, defendants have no record or recollection of having
20   ever received a grievance regarding the strip search of Mr. Gutierrez.  (Dkt. 39, at 18; Dkt. 39-
21   2 (hereinafter "Shand Decl."), at 2.)  Chief Corrections Deputy Gary Shand, who is also the
22   chief custodian of all inmate records, including all grievances, states that while Mr. Gutierrez
23   filed unrelated kites, he filed no grievances.  (*Id.*)  There is, however, a record of the
24   disciplinary charges that the jail filed against Mr. Gutierrez for refusing to remove
25   unauthorized clothing and possession of the contraband lighter.  (Dkt. 39-2, at 5–6.)  On this
26   document, signed by Mr. Gutierrez, he admitted the rule violations, accepted the sanction of 48

hours in isolation, and accepted the settlement agreement.  (*Id.*)  He did *not* check the box "I request a hearing." (*Id.* at 6.)  In his deposition, Mr. Gutierrez alleged that he signed this document only after he had already served his disciplinary segregation, and did so because he was told, "We need you to sign this.  This is why you were in the hole." (Gutierrez Dep. Tr., at 59–62.)  He stated, however, that he knew at the time of the incident that refusing to take off the unauthorized clothing and throwing the lighter were going to lead to disciplinary segregation.  (*Id.* at 69–70.)

      Mr. Gutierrez filed his original habeas petition in October 2008.  (Dkt. 1.)  The Court declined to serve it due to deficiencies, and he filed an amended complaint at the end of December 2008.  (Dkts. 8, 12.)  Because Deputy Smith was no longer employed by the Skagit County Jail, and Skagit County had not yet decided whether to provide him with representation, once Deputy Smith was served in May 2009, the Court granted his motion to continue the pretrial deadlines.  (Dkt. 28.)  Defendants moved for summary judgment in October 2009, but the Court later granted their motion continue the dispositive-motion deadline so they could properly serve the moving papers on Mr. Gutierrez.  (Dkt. 43.)  In December 2009, over defendants' objection regarding the length of the extension, the Court granted Mr. Gutierrez's motion for an extension of time to file a response to defendants' summary judgment motions.  (Dkt. 50.)  Mr. Gutierrez sought to file a response by January 5, 2010 (Dkt. 46, at 7); the Court set a deadline of January 8, 2010 (Dkt. 50, at 2).  To this date, Mr. Gutierrez has filed no response.

## DISCUSSION

Mr. Gutierrez brings his claims via 42 U.S.C. §§ 1983 and 1985, and 18 U.S.C. §§ 241 and 242, alleging that defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments by their conduct while subduing and strip searching him on February

REPORT AND RECOMMENDATION
PAGE - 4

24, 2006.[4]  (Dkt. 12, at 1, 4.)  In their summary judgment motions, defendants contend that Mr. Gutierrez cannot prove essential elements of his claims, that the individual defendants are entitled to qualified immunity, and that he failed to exhaust his remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321–71, 42 U.S.C. § 1997e *et seq*.  The Court finds that defendants have carried their burden of persuasion that Mr. Gutierrez failed to properly exhaust his remedies under the PLRA and therefore declines to reach the merits of the case.  The Court therefore recommends construing defendants' motions for summary judgment in relevant part as motions to dismiss, and dismissing Mr. Gutierrez's civil-rights complaint without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## I.   Legal Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court draws all reasonable inferences in favor of the non-moving party.  *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  It should also be granted where there is "a complete failure of proof concerning an essential element of the non-moving party's case."  *Celotex Corp.*, 477 U.S. at 323.  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment.  *Triton Energy Corp.*, 68 F.3d at 1221.

---

[4] The Court notes that Mr. Gutierrez may not impose criminal liability on defendants pursuant to 18 U.S.C. §§ 241 and 242 in the present civil suit.

REPORT AND RECOMMENDATION
PAGE - 5

Mr. Gutierrez failed to respond to defendants' properly filed and supported summary judgment motions, even after having requested and received an extension of time to respond. Federal Rule of Civil Procedure 56(e)(2) provides that a party opposing summary judgment has an obligation to respond:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. *If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.*

Fed. R. Civ. P. 56(e)(2) (emphasis added).

The Court here is concerned with the issue of whether, as defendants contend, Mr. Gutierrez properly exhausted his administrative remedies under the PLRA. The failure to exhaust such non-judicial remedies is subject to an unenumerated Rule 12(b) motion to dismiss rather than a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). This is because summary judgment is on the merits, whereas dismissal for failure to exhaust administrative remedies is not on the merits. *Id.* However, in deciding a motion to dismiss for failure to exhaust, a court may look beyond the pleadings and decide disputed issues of fact, a procedure closely analogous to summary judgment. *Id.* at 1119–20 & n.14. Thus, whether a party moves for summary judgment or for dismissal for failure to exhaust administrative remedies, a court will employ the same standard of review. The proper remedy for a prisoner's failure to exhaust is dismissal of his claim without prejudice. *Id.* at 1120.

The Court construes the portions of defendants' motions that seek summary judgment based on non-exhaustion of administrative remedies as unenumerated Rule 12(b) motions but applies what amounts to the summary judgment standard in reviewing the supporting documents and resolving the disputed issues of fact. *See, e.g.*, *Morton v. Hall*, __ F.3d __, 2010 WL 843879, at *1–*3 (9th Cir. Mar. 12, 2010) (affirming district court's dismissal without prejudice for prisoner's failure to exhaust administrative remedies pursuant to PLRA

where defendants moved for dismissal in summary judgment motion); *Garrott v. LeFrancis*, 2010 WL 605310, at *2 (W.D. Wash. Feb. 18, 2010) (dismissing claim for failure to exhaust administrative remedies pursuant to PLRA where defendants moved for dismissal in summary judgment motion).

## II.     Exhaustion of Administrative Remedies

The PLRA created a requirement that prisoners exhaust administrative remedies within the prison grievance system before filing a civil-rights lawsuit regarding prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). According to the United States Supreme Court, such "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement applies even where the relief sought—monetary damages—cannot be granted by the administrative process. *Id.* at 85; *Booth v. Churner*, 532 U.S. 731, 733 (2001). The PLRA applies to pretrial detainees, such as Mr. Gutierrez, and administrative exhaustion is required for any suit challenging prison conditions, not just for suits under § 1983. 42 U.S.C. § 1997e(h); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requisite exhaustion is "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90–91. If administrative remedies have not been exhausted at the time an action is brought, it must be dismissed without prejudice. *See Wyatt*, 315 F.3d at 1120; *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). Failure to satisfy the PLRA exhaustion requirement is an affirmative defense as to which the defendant has the burden of proof. *Wyatt*, 315 F.3d at 1119.

Defendants first raised the affirmative defense of non-exhaustion in their answers to the complaint. (Dkt. 23, at 4; Dkt. 25, at 3.) On summary judgment, defendants have filed declarations and exhibits, including the incident reports and all other documents relating to Mr. Gutierrez's February 24, 2006 altercation and contraband offenses: (1) a record of Gutierrez's disciplinary charges: settlement agreement and signed copy of acceptance; (2) an affidavit and a warrant for the body-cavity search; (3) a report of Detective Sheahan-Lee regarding the body-cavity warrant; (4) a report of Skagit County Sheriff's Office Deputy Dillaman regarding the body-cavity search; (5) reports of Sergeant Schrader; and (6) a warrant from the State of California for the arrest that led to Mr. Gutierrez's detention in Washington. (*See* Shand Decl., at 1–3; Dkt. 39-2, at 4–26.) There is no record that Mr. Gutierrez ever filed a grievance, no record that he received any response from the jail, and no record that he ever inquired as to the status of his grievance. (Shand Decl., at 2.)

In his deposition, Mr. Gutierrez stated that he was aware of his requirement to file a grievance, and that he had filed one through his cellmate Mr. Lisano. (Gutierrez Dep. Tr., at 38–41, 46–47.) He did not, however, respond to defendants' summary judgment motions through, for example, filing a copy of the grievance or submitting an affidavit from Mr. Lisano. Thus, aside from his bare allegations, there is no evidence that Mr. Gutierrez filed a grievance, that he ever received a response or a hearing, that he ever asked jail officials why he had received no response, or that he ever sought any other form of review of the incident. Mr. Gutierrez's conduct did not, therefore, put prison officials on notice regarding his complaint about the February 24, 2006 incident, nor did it constitute proper exhaustion of all administrative remedies. *See, e.g.*, *Morton*, 2010 WL 843879, at *3.

Section 1997e(a) requires that a plaintiff present his claims to each level of administrative review prior to raising those claims in a civil-rights action. Defendants' motions for summary judgment and supporting exhibits and declarations establish that Mr. Gutierrez not only failed to avail himself of each level of administrative review, he failed even

REPORT AND RECOMMENDATION
PAGE - 8

to file a written grievance about the February 24, 2006 incident. Mr. Gutierrez declined to respond to this evidence after requesting and receiving additional time to do so. The Court finds that defendants have carried their burden of showing that Mr. Gutierrez failed to properly exhaust his administrative remedies prior to filing this civil-rights action. The Court therefore recommends that Mr. Gutierrez's complaint be dismissed without prejudice.

## CONCLUSION

Defendants have met their burden of showing that Mr. Gutierrez did not properly exhaust his administrative remedies as required by 42 U.S.C § 1997e(a), and Mr. Gutierrez has chosen not to rebut their evidence in any manner. The Court recommends GRANTING defendants' motions for summary judgment (Dkts. 32, 39)—construed, in relevant part, as motions to dismiss—and DISMISSING the complaint without prejudice based on plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). A proposed order is attached.

DATED this 16th day of March, 2010.

JAMES P. DONOHUE
United States Magistrate Judge